# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC., : | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 13-852 |
| | : | |
| THOMAS THOMASIAN, | : | |
| Defendant. | : | |

## OPINION

BUCKWALTER, S. J.                                                                                                                                              May 1, 2013

This opinion is filed because after the court announced its decision denying plaintiff's motion for preliminary injunction on April 30, 2013, plaintiff notified the court that it intended to appeal.

Primarily in the interest of the parties having an expeditious decision, the court had announced earlier that it would not request proposed findings of fact and conclusions of law from either side – an exercise that would add considerable delay to the determination of the issue of vital importance to both sides.

The following is a combination of findings of fact and conclusions of law.

On August 20, 2000, defendant entered into an Employee Agreement With Restrictive Covenants (P-1).

Defendant terminated his employment with plaintiff on February 10, 2013. Prior to that date, on January 4, 2013, he had accepted an offer to work for CoActiv.

On February 11, 2013, defendant was officially welcomed to CoActiv (P-11). In the February 11, 2013 letter (P-11), CoActiv made it clear that they were aware of the Employee Agreement, stating:

> We understand that you are or may be party to an Employment Agreement with your former employer, De Lage Landen Financial Services, Inc., which may include certain restrictive covenants and/or obligations to protect De Lage Landen Trade Secrets and/or Confidential Information.
> While we do not believe that the restrictive covenants set forth in your Agreement with De Lage Landen Financial Services, Inc. are enforceable under law for a variety of reasons, we do believe that you should take very seriously and fully comply with your obligations thereunder regarding the protection of De Lage Landen Confidential Information and/or Trade Secrets.
> CoActiv Capital Partners, Inc. has hired you <u>not</u> because you may possess any particular information, much less Confidential and/or Trade Secret Information of De Lage Landen or any other prior employer, but rather because of your unique and ample skills developed over time.
> CoActiv Capital Partners, Inc. expects that you will not breach any Agreement or obligation that you have to refrain from disclosing or using confidential or proprietary information, and you will not disclose to CoActiv or use on CoActiv's behalf any confidential or proprietary information or material belonging to De Lage Landen. Further, you will not use in your work for CoActiv any property of De Lage Landen.

Defendant had already breached paragraph IV of the Employee Agreement on or about January 23, giving plaintiff's laptop and security credentials to CoActiv. He subsequently returned his laptop and Blackberry to plaintiff on or about February 20, 2013, five days after plaintiff had initiated this present lawsuit.

On February 25, 2013, the parties appeared before this court on a TRO hearing, which ultimately resulted in a hearing for a preliminary injunction, before which the parties engaged in extensive discovery. At or about the time of the TRO and subsequently, the court expressed its concern regarding the element of irreparable harm and the difficulty in showing that damages are

such that can only be adequately compensated by granting an injunction and are not readily susceptible to reducing to a monetary amount.

Aware of this concern, both parties filed numerous briefs on the subject of irreparable harm.

Before getting to the evidence relative to irreparable harm, it should be noted that while the evidence that defendant has breached paragraph IV and paragraph VII (defendant appears to have encouraged a plaintiff's employee to work for CoActiv), the evidence presented with respect to V (non-compete) and VI (non-solicitation) falls short of showing likelihood of success of plaintiff in these two areas, in several respects:

1. The evidence supports a finding that CoActiv does not compete with plaintiff on a national basis at this time; the difference in sales, sales coverage and CoActiv's year-to-date sales suggest that these two companies are not presently in the same ballpark.

2. Defendant has established an office about 40 miles from any of plaintiff's regional offices.

3. Defendant has not solicited former customers. His contact with them has been either by customers calling him directly or the customers talking first to Patrick Neary and requesting that defendant call them directly. (Patrick Neary left plaintiff after many years of working for it. He joined CoActiv shortly before defendant but apparently had no enforceable non-compete contract with plaintiff). [The notion that this lawsuit is really aimed at Neary is mere speculation].

Nevertheless, as previously stated, defendant violated the agreement (P-1) and paragraph IX makes it clear that such an event entitles plaintiff to injunctive relief.

3

The issue in this regard is irreparable harm, injury of "a peculiar nature" which "compensation in money alone cannot atone."

In support of its argument, plaintiff argues that money damages cannot adequately be determined. Robert J. Hunter, Senior Vice-President in Charge of U.S. Sales, testified as follows:

> In our business if you sell it for $25,000, we're not going to know for five years whether it cost us $27,000, $20,000, $18,000 or $16,000 because it's not that we're selling a tangible asset. We're selling a behavior for the next five years plus beyond that five years. So there's no way to quantify that – that actual whether you made money or lost money until you look back at it – seven years later and say, "Okay. Here's how many customers actually paid. Here's how many went bad that we didn't get any money on. Here's how much it cost us to go out and originate the relationship."

Rene Paradis, the CFO of CoActiv testified to the effect that she did not agree with this inability to determine loss until five or seven years down the road.

In this regard, my impression of Mr. Hunter as a knowledgeable and savvy businessman made me somewhat dubious of his inability to spot a loser before five to seven years.

Secondly, plaintiff argues that the loss of good will cannot be calculated. In this regard, the court mistakenly made the comment that plaintiff never introduced any testimony regarding whether defendant was good at his job or not. In fact, Mr. Hunter testified that defendant was a very valuable employee of plaintiff and spoke highly of him at several times in his testimony.

The problem with plaintiff's case is that it has offered nothing concrete to show what effect defendant's leaving has had to date. The only evidence in this area was to the contrary. An e-mail that Hunter, among others received from District Sales Manager Nick Santoro three days before this lawsuit was filed stated:

> Equally important, Pat Neary is already calling these Vendors, on behalf of both Thomasian and Hart. He stated that neither of them can call them at this point, but that they are "on board" there, so they can send business to them right away! What they didn't count on, is me calling these same dealers today, advising them of my working with them going forward.
> I have already contacted the major Producing Vendors, and will work on the smaller ones the rest of today. While most of them cannot believe Thomasian would leave a company of our caliber, and a job like the one he had, not a single one of them will pull any business away from us.

Finally, there is the "balance of harms" issue in determining whether a preliminary injunction should issue. Defendant testified that he had a wife and two children, one attending Brown University (tuition over $60,000 per year) and losing his paycheck would be devastating. This is true in any case of this nature, but this case has an additional twist. Defendant testified that his home in Oceanport was devastated by Hurricane Sandy and the insurance shortfall to date is in the neighborhood of $60,000. Such an unexpected event cannot in any way be attributed to defendant.

Plaintiff, on the other hand, is doing quite well and doesn't even know if defendant's working for a competitor will hurt it beyond speculation that is more confusing than helpful to the court. For example, see N.T. 4/18/13 at 68.

As I suggested earlier, the mere loss of salary would not alone balance the harm in favor of defendant, nor would the large tuition expense. But a totally unforseen expense beyond defendant's control is another matter. I find that on this issue as well as failure to show irreparable harm, plaintiff is not entitled to an injunction.

There are no novel issues in this case and no reason to enjoin defendant pending appeal.

To summarize, the court has found:

5

1.	The plaintiff will likely succeed on the merits with respect to breach of the contract, specifically, paragraphs IV and VII.

2.	The public interest favors enforcement of written contracts entered into willingly and knowingly by the parties thereto.

3.	The plaintiff has failed to produce evidence that irreparable harm will occur as a result of the breach or even if such harm has or will occur what has been caused by defendant's conduct.

4.	The balance of harm weighs in favor of defendant for the reasons stated.

Accordingly, the following order is entered:

**AND NOW**, this 1st day of May, 2013, it is hereby **ORDERED** that Plaintiff's Motion for Preliminary Injunction is **DENIED**.


BY THE COURT:


*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER, S. J.